ORIGINAL

1  Christopher T. Casamassima (SBN 211280)
2  WILMER CUTLER PICKERING
     HALE AND DORR LLP
3  350 South Grand Avenue, Suite 2100
   Los Angeles, CA 90071
4  Telephone: (213) 443-5374
   Facsimile: (213) 443-5400
5  Email: chris.casamassima@wilmerhale.com

6  Bruce M. Berman (*pro hac vice* pending)
   Jonathan E. Paikin (*pro hac vice* pending)
7  WILMER CUTLER PICKERING
     HALE AND DORR LLP
8  1875 Pennsylvania Avenue NW
   Washington, DC 20006
9  Telephone: (202) 663-6000
   Facsimile: (202) 663-6363
10 Email: bruce.berman@wilmerhale.com

*Attorneys for Defendants*

FILED

AUG 0 7 2013

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA

DMR

CV 13 3660

| | |
|---|---|
| SAN MATEO UNION HIGH SCHOOL DISTRICT, a school district, individually and on behalf of the members of the SAN MATEO UNION HIGH SCHOOL DISTRICT and AP STUDENTS – VIKING PARENT GROUP, an unincorporated association, <br><br> Plaintiffs, <br><br> v. <br><br> EDUCATIONAL TESTING SERVICE, a corporation, COLLEGE ENTRANCE EXAMINATION BOARD, a corporation, and DOES 1 through 10, inclusive, <br><br> Defendants. | CIVIL CASE NO.: 3660 <br><br> NOTICE OF REMOVAL <br><br> State Court Docket: <br> California Superior Court, <br> San Mateo County, <br><br> Case No. CIV-523184 |

NOTICE OF REMOVAL

**TO THE CLERK OF THE ABOVE-TITLED COURT:**

PLEASE TAKE NOTICE THAT, for the reasons stated below, Defendants Educational Testing Service ("ETS")[1] and College Entrance Examination Board ("College Board") hereby remove the above-captioned action from the California State Superior Court for the County of San Mateo to the United States District Court for the Northern District of California.

As grounds for removal, the undersigned Defendants state as follows:

### SUMMARY

1. Defendants may properly remove an action from state court pursuant to 28 U.S.C. § 1441(a) if the federal district court has original jurisdiction over the action. This Court has original jurisdiction over this matter because "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs" and "is between…citizens of different states." 28 U.S.C. § 1332(a). Any claims not removable on that basis are removable under this Court's supplemental jurisdiction. *See id.* § 1367.

### PROCEDURAL HISTORY AND BACKGROUND

2. On or about August 5, 2013, Plaintiffs filed an action captioned *San Mateo Union High School District, et al. v. Educational Testing Services, et al.*, Case No. CIV-523184, in California State Superior Court for the County of San Mateo (the "State Court"). A copy of the Complaint is attached hereto as <u>Exhibit A</u>.

3. The Complaint alleges that the Defendants invalidated 641 Advanced Placement ("AP") Examination scores after discovering irregularities in the administration of the exams at Mills High School in Millbrae, California. Specifically, it is alleged, ETS and the College Board invalidated the scores because the exams were administered using "improper seating conditions." Compl. ¶¶ 3, 47-50.[2]

---

[1] The Complaint's caption incorrectly refers to this defendant as "Educational Testing Services."

[2] Plaintiffs do not deny that the Mills High School failed to administer the AP exams in accordance with the rules set forth in the *AP Coordinator's Manual* provided by Defendants. *See* Compl. ¶ 72; *see also AP Coordinator's Manual* at 45-46 (Exhibit 6 to Plaintiff's Request for Judicial Notice in Support of App. for TRO) (specifying that "[e]veryone must face the same

(continued…)

4.   The Complaint asserts claims for breach of contract, breach of the implied covenant of good faith and fair dealing, violation of the California Unfair Competition Law (Bus. & Prof. Code § 17200, *et seq.*), declaratory relief, a temporary restraining order, preliminary and permanent injunctions, and violation of procedural due process under Article 1, § 7(a) of the California Constitution. Compl. ¶¶ 74-115. Plaintiffs seek broad equitable relief as well as recovery of their costs and other relief. *Id.* at 37-38. Defendants dispute that Plaintiffs are entitled to any relief.

5.   Defendants' time to respond to the Summons and Complaint has not expired, and none of the Defendants has served or filed an Answer.

6.   A motion for a temporary restraining order, filed on August 6, 2013, is currently pending in the State Court. That motion and the accompanying papers are attached to this filing as <u>Exhibit B</u>. No other motions or proceedings in this action are pending in State Court.

7.   This Notice of Removal is timely filed pursuant to 28 U.S.C. § 1446(b), because it is filed less than thirty days from August 6, 2013, the date upon which Defendants were served with a copy of Plaintiffs' Complaint. No previous notice of removal has been filed or made to this Court for the relief sought herein.

8.   The action is removable to this Court because San Mateo County is located in the Northern District of California. *See* 28 U.S.C. § 1441(a).

9.   28 U.S.C. § 1332(a) establishes original jurisdiction in United States District Court for a civil case "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs," and the matter "is between … citizens of different States."

---

direction," that there should be "no less than five feet … between students," and that "[s]tudents should not be seated around the same table or face one another"). Plaintiffs also acknowledge that the AP examination Participation Form signed by Mills High School and the *Bulletin for AP Students and Parents* both reference the policies and procedures in the *AP Coordinator's Manual. Id.* ¶¶ 26, 29.

1  The instant action meets the requirements for federal diversity jurisdiction set forth in this
2  provision.

### I.  There Is Complete Diversity of Citizenship Between the Parties

10. To meet the requirement in § 1332(a) that a matter is "is between…citizens of different States," "there must be complete diversity of citizenship between the parties opposed in interest." *Kuntz v. Lamar Corp.*, 385 F.3d 1177, 1181 (9th Cir. 2004). That requirement is met here.

11. The two plaintiffs in this case are the San Mateo Union High School District ("School District") and the AP Students – Viking Parent Group ("Viking Group"). Compl. ¶¶ 17-18.

12. The School District is, according to Plaintiffs, a "properly constituted school district as described by the California Education Code." Compl. ¶ 17. The School District is therefore a California citizen for diversity purposes. *See, e.g., Smith v. Greenville County School Dist.*, 2010 WL 4484099, at *3 (D.S.C., Oct. 5, 2010) (for diversity purposes school district is citizen of state where it is located); *Beadle v. Memphis City Schools*, 2008 WL 4982715, at *5 (W.D. Tenn., Nov. 18, 2008) (same).

13. The Complaint describes the Viking Group as a "California unincorporated association." Compl. ¶ 18. For determining diversity of citizenship, courts look to the individual members of unincorporated associations. *Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006). According to the Complaint, the members of the Viking Group are (1) high school students who took AP exams at Mills High School, a public high school located in California, and (2) "those students' parents." Compl. ¶ 18. The Complaint also confirms that these students are "Mills High School Students." *Id.* ¶ 1. There is no allegation that any members of the Viking Group are citizens of any state other than California, nor are Defendants aware of any facts indicating otherwise. Thus, based on Defendants' information and belief, all members of the Viking Group live in and are citizens of California.

14. Defendants ETS is a not-for-profit corporation headquartered in New Jersey and incorporated in New York.

15. Defendant College Board is a not-for-profit corporation headquartered and incorporated in New York.

16. The Complaint describes defendants Does 1 through 10 as "officers, agents and/or members of ETS and/or College Board and/or participants in the unlawful activities, conduct and practices hereinafter alleged." Compl. ¶ 21. "In determining whether a civil action is removable on the basis of the jurisdiction under section 1332(a) of this title, the citizenship of defendants sued under fictitious names shall be disregarded." 28 U.S.C. § 1441(b)(1).

17. Because all plaintiffs are citizens of California, and all non-anonymous defendants are citizens of states other than California, this litigation "is between …citizens of different States." 28 U.S.C. § 1332(a).

**II.  The Amount in Controversy Exceeds $75,000**

18. Defendants deny that that they are liable to Plaintiffs in any way whatsoever. However, if a court were to order the relief Plaintiffs demand, it would cost Defendants more than $75,000.

**A.  The Cost To "Grade and Validate the Tests, and Report the Results to the Requested Colleges and Universities" Exceeds $75,000**

19. Where "the potential cost to the defendant of complying with the injunction exceeds" the statutory minimum for diversity jurisdiction, that cost "represents the amount in controversy for jurisdictional purposes." *See In re Ford Motor Co./Citibank (S.D.), N.A.*, 264 F.3d 952, 958 (9th Cir. 2001).[3]

---

[3] The Ninth Circuit in *Ford* ultimately denied diversity jurisdiction because the plaintiffs were "a putative class of six million individuals," each of whom had a small individual claim, and the "either viewpoint rule" that measures "the pecuniary result to either party" was inapplicable to class action suits. *Id.*

20. The gravamen of the Complaint is that ETS and the College Board invalidated the test scores of approximately 286 students, who took a total of 641 AP examinations, without conducting a comprehensive investigation to determine any or all students had cheated on one or more AP exams. The Complaint requests, *inter alia*, "an order requiring Defendants to show cause ... why they should not be required ... to grade and validate the tests, and report the results to the requested colleges and universities," and "a temporary restraining order, a preliminary injunction, and a permanent injunction, all requiring Defendants ... to grade and validate the tests, and report the results to the requested colleges and universities." Compl. at 38.

21. Plaintiffs specifically argue that "if there is a failure to strictly adhere to the [AP exam administration] rules by a school, Defendant ETS should determine, in good faith, if there is evidence that the test scores of any students are invalid." *Id.* ¶ 44. Plaintiffs assert that Defendants were legally required to conduct an investigation that included "a comparison of students' scores with prior scores, or with other students' scores; handwriting analysis; interviewing the individual students whose scores are being invalidated; [and] statistical analysis." *Id.* ¶ 67. Plaintiffs also complain that Defendants did not perform "a **particularized student-by-student investigation**" at Mills High School. *Id.* ¶ 61 (emphasis in original). They claim that they are entitled to relief because "Defendants did not evaluate the totality of the testing environment, conducted only a perfunctory investigation of the testing environment, made no effort to determine if there was any cheating at Mills High School and made no effort to determine if the alleged 'testing irregularities' materially affected any score." *Id.* ¶ 9. They complain further that "Defendants had done nothing to evaluate the entirety of the testing environment, Defendants had not interviewed anyone from [the School District] and Defendants had not visited the testing site." *Id.* ¶ 49; *see also id.* ¶ 2 ("ETS and the College Board invalidated the scores... even though there is no evidence of cheating and no evidence of any testing irregularities impacting any of the test scores"); *id.* ¶ 8 ("It is unjust to deprive these students of their test scores without any actual proof of individualized wrongdoing."). They allege that "Defendants had the means to validate scores

by interviewing proctors/students, comparing students' scores to previous scores, and looking for other irregularities in scores, yet the[y] failed to do so." *Id.* ¶ 70.

22.     The "particularized student-by-student investigation" that Plaintiffs claim the Defendants were legally obligated to perform before canceling any AP exam scores at Mills High School would cost far in excess of $75,000. It would, by Plaintiffs' reckoning, require site visits in Millbrae, California by ETS investigators based in New Jersey; interviews of the 286 affected students and of school administrators and proctors; a comparison of students' scores with prior scores, or with other students' scores; handwriting analysis; and statistical analysis. Defendants would have to expend further resources "grad[ing] ... the tests, and report[ing] the results to the requested colleges and universities." Compl. at 38.[4]

### B.     Attorneys' Fees and Expenses Will Exceed $75,000

23.     "[W]here an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy." *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998). Among other counts, Plaintiffs seek relief under the California Unfair Competition Law, Bus. & Prof. Code § 17200, *et seq*. Under that statute, a plaintiff "may seek attorney fees as a private attorney general pursuant to Code of Civil Procedure section 1021.5." *Walker v. Countrywide Home Loans, Inc.*, 98 Cal. App. 4th 1158, 1179 (Cal. App. 2 Dist. 2002). The Complaint thus includes a demand for the "costs of suit incurred in this action" and "such further relief as the Court deems proper." Compl. at 38. In a complex case such as this one, Plaintiffs' legal fees would

---

[4] There is no basis for dividing the costs by the number of individual students and/or parents affected by the invalidation of the test scores. There are only two plaintiffs in the case, the School District and the Viking Group. Both plaintiffs seek broad and collective injunctive relief. *See* Compl. ¶¶ 17-18; *see also Cronin v. State Farm Lloyds*, 2008 WL 4649653, at *6 (S.D. Tex., Oct. 10, 2008) ("[F]or unincorporated associations ... courts have consistently looked to ... the association itself as an entity for amount in controversy purposes." (emphasis added)); *Weston Plaza, LTD v. Hartford Lloyd's Ins. Co.*, 2011 WL 4712239 (N.D. Tex., Sept. 1, 2011) (same); *United Services Auto. Ass'n v. Franke Consumer Products, Inc.*, 2012 WL 368378 (N.D. Cal., Feb. 3, 2012) (where nationwide unincorporated association sued for $147,200 in damages, observing "[t]here is no dispute in this case regarding the sufficiency of the amount in controversy for establishing subject matter jurisdiction").

surely exceed $75,000. See *Miera v. Dairyland Ins. Co.*, 143 F.3d 1337, 1340 (10th Cir. 1998) ("The Supreme Court has long held that when a statute permits recovery of attorney's fees a reasonable estimate may be used in calculating the necessary jurisdictional amount in a removal proceeding based upon diversity of citizenship."); see also *Williams v. Bank of New York Mellon*, 2013 WL 2422895, at *3 (D. Md., June 3, 2013) (adding the expected attorney's fees and the amount requested in actual damages to determine the total amount in controversy).

### C. The Complaint Makes Clear That Plaintiffs Intend To Seek Recovery Of Damages In Excess of $75,000

24. Plaintiffs allege that "*[a]t this time*, [they do] not seek monetary damages." Compl. ¶¶ 86, 93 (emphasis added). However, they have not disclaimed any intention to seek monetary damages, and they expressly assert financial harm in excess of $75,000:

> "As a result of the acts and omissions of Defendants, the Viking Group has been damaged, including but not limited to the AP students having been deprived the right to their original AP scores which, in most cases, directly translates into college credit, and has a monetary value in the form of significantly reduced monies paid in college tuition. The acts and omissions of Defendants have caused significant and substantial direct damages to the students and their parents, in the form of financial harm."

Compl. ¶ 18. The collective damages of the 286 students purportedly represented by the Viking Group well exceeds $75,000. Indeed, numerous individual students whose AP tests were invalidated have expressly alleged that they suffered "financial harm."[5] See *Walton v. Bayer Corp.*, 643 F.3d 994, 998 (7th Cir. 2011) (even though plaintiff alleged damages in excess of $50,000 but contested that the amount in controversy requirement was met, "the litany of injuries she claims to have sustained ... makes clear that she is seeking damages in excess of $75,000").

---

[5] *See, e.g.*, Decl. of Kelley Chao in Sup. of TRO ¶ 19; Decl. of Darren Fong in Sup. of TRO ¶ 23; Decl. of Jennifer Kao in Sup. of TRO. ¶ 40; Decl. of Nathan Li in Sup. of TRO. ¶ 31; Decl. of Jessica Liang in Sup. of TRO ¶ 29 (alleging she will have to pay extra tuition of "nearly $62,000"); Decl. of Grant Murphy in Sup. of TRO. ¶ 24; Decl. of Christopher Tarangioli in Sup. of TRO. ¶ 29.

25. In addition, the school district complains about "the cost of preparing for and administering" the retest of the AP examinations at Mills High School. *See* Compl. ¶¶ 78, 89. These costs must also be counted towards the $75,000 amount in controversy.

26. Plaintiffs' tactical decision not to seek monetary damages "at this time" does not deprive Defendants of their right to have this case heard in federal court. *See, e.g., Werwinski v. Ford Motor Co.*, 286 F.3d 661, 667 (3d Cir. 2002) (affirming denial of motion to remand where complaint "clearly leaves the door open for [plaintiffs] later to demand reimbursement for the purchase price of the cars"); *Tumminello v. Murphy Oil Corp.*, C.A. No. 09-7324, 2010 WL 1333139, at *1 (E.D. La. Mar. 29, 2010) ("Concern arises, however, when a litigant could plead less than the jurisdictional amount required for federal jurisdiction in order to avoid removal but then subsequently prove and be awarded damages greater than the jurisdictional amount in state court.").

27. If Plaintiffs genuinely seek less than $75,000—inclusive of attorney's fees—they can file a binding stipulation to that effect. *See Standard Ins. Co. v. Knowles*, 133 S. Ct. 1345, 1350 (2013) ("federal court, as condition for remand, can insist on a 'binding affidavit or stipulation that the plaintiff will continue to claim less than the jurisdictional amount'" (internal quotation marks omitted)). But in the absence of such a stipulation, Defendants cannot be forced to litigate in state court as a result of Plaintiffs' artful pleading.

### III. The Court Has Supplemental Jurisdiction Over Any Remaining Claims

28. For the reasons discussed, all of Plaintiffs claims are removable to federal court under this Court's diversity jurisdiction. However, insofar as any of Plaintiffs' claims are not individually removable based on diversity jurisdiction, this Court should exercise its discretion to invoke supplemental jurisdiction over those claims because they are transactionally related to the removable claims. 28 U.S.C. § 1367. All claims in this case arise out of the same "common nucleus of operative facts," and therefore any claims not removable based on diversity of citizenship are nonetheless removable via supplemental jurisdiction. *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1288 (9th Cir. 2013).

## OTHER PROCEDURAL ISSUES

29. Promptly upon the filing of this Notice of Removal, a true copy of this Notice of Removal will be provided to all adverse parties pursuant to 28 U.S.C. § 1446(d). Pursuant to Rule 5(d) of the Federal Rules of Civil Procedure, Defendants will file with this Court a Certificate of Service of notice to the adverse parties of removal to federal court.

30. Upon the filing of this Notice of Removal, Defendants will promptly file a Notification of Filing of Notice of Removal with the Clerk of the Superior Court of the State of California, County of San Mateo, in accordance with 28 U.S.C. § 1446(d).

31. By filing this Notice of Removal, Defendants do not waive any defenses that may be available to any of them (including without limitation any defenses relating to service, process, and jurisdiction) and do not concede that the allegations in the Complaint state a valid claim under any applicable law.

32. Defendants reserve the right to submit at an appropriate time factual support, evidence, and affidavits to support the basis for federal jurisdiction, should that become necessary.

///

///

10
NOTICE OF REMOVAL

### Notice to State Court and Plaintiffs

Counsel for Defendants certifies that pursuant to 28 U.S.C. § 1446(d), copies of this Notice of Removal will be filed with the Clerk of the Superior Court of the State of California, County of San Mateo, and served on plaintiffs promptly.

WHEREFORE, the case now pending in the Superior Court of the State of California, County of San Mateo, Case No. CIV-523184, is hereby removed to the United States District Court for the Northern District of California pursuant 28 U.S.C. §§ 1332, 1367, and 1441.

DATED: August 7, 2013

WILMER CUTLER PICKERING HALE and DORR LLP

By _(signature)_

Christopher T. Casamassima (SBN 211280)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
350 South Grand Avenue, Suite 2100
Los Angeles, CA 90071
Telephone: (213) 443-5374
Facsimile: (213) 443-5400
Email: Chris.Casamassima@wilmerhale.com

Bruce M. Berman (*pro hac vice* pending)
Jonathan E. Paikin (*pro hac vice* pending)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
Telephone: (202) 663-6000
Facsimile: (202) 663-6363
Email: Bruce.Berman@wilmerhale.com

*Attorneys for Defendants*