1 | Nancy L. Fineman (Cal. SBN 124870)
nfineman@cpmlegal.com
2 | **COTCHETT, PITRE & McCARTHY, LLP**
840 Malcolm Road, Suite 200
3 | Burlingame, CA 94010
Telephone:  (650) 697-6000
4 | Facsimile:  (650) 697-0577

5 | Gregory A. Wedner (Cal. SBN 67965)
gwedner@lozanosmith.com
6 | **LOZANO SMITH**
One Capitol Mall, Suite 640
7 | Sacramento, CA 95814
Telephone:  (916) 329-7433
8 | Facsimile:  (916) 329-9050

9 | *Attorneys for Plaintiff San Mateo*
*Union School District*

Jack W. Lee (Cal. SBN 71626)
JLee@MinamiTamaki.com
Sean Tamura-Sato (Cal. SBN 254092)
seant@minamitamaki.com
**MINAMI TAMAKI LLP**
360 Post Street, 8th Floor
San Francisco, California 94108-4903
Telephone: 415 788 9000
Facsimile: 415 398 3887

*Attorneys for Plaintiff AP Students – Viking Parent*
*Group*

### UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAN MATEO UNION HIGH SCHOOL DISTRICT, a school district, individually and on behalf of the members of the SAN MATEO UNION HIGH SCHOOL DISTRICT, and AP STUDENTS – VIKING PARENT GROUP, an incorporated association,<br><br>Plaintiffs,<br><br>v.<br><br>EDUCATIONAL TESTING SERVICES, a corporation; and COLLEGE ENTRANCE EXAMINATION BOARD, a corporation; and DOES 1 through 10, inclusive,<br><br>Defendant. | Case No. CV-13-3660-SBA<br><br>**PLAINTIFFS' REPLY ISO *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER; ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION**<br><br>Date:  TBD<br>Time:  TBD<br>Courtroom 1, Fourth Floor<br>Hon. Saundra Brown Armstrong |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................................... 1

II.    RESPONSE TO DEFENDANTS' EVIDENCE ............................................................ 2

III.    LEGAL ARGUMENT ................................................................................................... 3

    A.    Plaintiffs Have Standing to Sue ....................................................................... 3

    B.    Plaintiffs Seek An Appropriate Remedy .......................................................... 5

    C.    Plaintiffs Have a Likelihood of Prevailing on the Merits ................................ 5

        1.    The Viking Group Has Sufficiently Alleged a Breach of Contract ....................... 5

        2.    SMUHSD Has Sufficiently Alleged a Breach of Contract ..................................... 7

        3.    Defendants Violated the Implied Covenant of Good Faith and Fair Dealing ......... 8

        4.    Plaintiffs Can Prevail on Their Unfair Competition Law ("UCL") Claim ............. 9

        5.    Plaintiffs Have Alleged a Due Process Violation ................................................... 9

IV.    CONCLUSION ............................................................................................................ 10

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Associated Gen. Contractors of California, Inc. v. Coal. for Econ. Equity*,
  950 F.2d 1401 (9th Cir. 1991) ........................................................................ 4

*Bracco v. Lackner*,
  462 F.Supp. 436 (N.D. Cal. 1978) ................................................................. 2

*Carma Developers, Inc. v. Marathon Dev. California, Inc.*,
  2 Cal.4th 342 (1992) ....................................................................................... 8

*Crow v. ETS*,
  1982 U.S. Dist. LEXIS 18191 *(W.D. La. April 28, 1982)* ............................ 7

*De Pina v. Educ. Testing Serv.*,
  31 A.D.2d 744 (App. Div. 1969) .................................................................... 8

*Gregory v. Albertson's, Inc.*,
  104 Cal. App. 4th 845 (2002) ......................................................................... 9

*Gutierrez v. Autowest, Inc.*,
  114 Cal.App.4th 77 (2003) ............................................................................. 6

*Hunt v. Washington State Apple Adver. Comm'n*,
  432 U.S. 333 (1977) ........................................................................................ 3

*Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. v. Brock*,
  477 U.S. 274 (1986) ........................................................................................ 4

*Jackson v. Metropolitan Edison Co.*,
  419 U.S. 345, 351 (1974) ................................................................................ 10

*Johnson v. ETS*,
  754 F.2d 20, 26 (1st Cir. 1985) ...................................................................... 8

*K.D. v. ETS*,
  87 Misc. 657, 659-660 (N.Y. Sup. Ct. 1976) ............................................... 7, 8

*Koza v. ACT, Inc.*,
  2001 WL 1191050 at *10 (Mich. Ct. App. Oct. 10, 2001) ............................ 7

*Langston v. ACT, Inc.*,
  890 F.2d 380 (11th Cir. 1989) ........................................................................ 8

*Little v. Auto Stiegler, Inc.,*
    29 Cal.4th 1064 (2003) ............................................................................ 6

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.,*
    571 F.3d 873 (9th Cir. 2009) ................................................................... 5

*McKell v. Washington Mut., Inc.,*
    142 Cal.App.4th 1457 (2006) .................................................................. 9

*Ohno v. Yasuma,*
    2013 U.S. App. LEXIS 13496 (9th Cir. July 2, 2013)........................... 10

*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC,*
    55 Cal. 4th 223 (2012) ............................................................................. 6

*San Joaquin Deputy Sheriffs' Ass'n v. Cnty. of San Joaquin,*
    898 F.Supp.2d 1177 (E.D. Cal. 2012)..................................................... 4

*Scott v. ETS,*
    252 N.J. Super. 610 (N.J. Super. Ct. App. Div. 1991) ........................... 8

*Sierra Club v. Glickman,*
    82 F.3d 106 (5th Cir. 1996) ..................................................................... 4

*Stockstill v. Quinnipiac Univ.,*
    2010 U.S. Dist. LEXIS 49481 (D. Conn. May 19, 2010)........................ 5

*Storek & Storek, Inc. v. Citicorp Real Estate, Inc.,*
    100 Cal.App.4th 44 (2002) ...................................................................... 8

*Vargas v. SAI Monrovia B, Inc.,*
    216 Cal.App.4th 1269 (2013) .................................................................. 6

*Waller v. Truck Ins. Exchange, Inc.,*
    11 Cal.4th 1 (1995) .................................................................................. 8

*Winter v. Natural Resources Defense Council,*
    555 U.S. 7 (2008)...................................................................................... 5

*Yaeger v. Educational Testing Service,*
    158 A.D.2d 602 (App. Div. 1990) ........................................................... 8

*Zhang v. Superior Court,*
    2013 Cal. LEXIS 6520 (Aug. 1, 2013) ................................................... 9

**Statutes**

Civil Code

§ 1643.................................................................................................................................... 6

§ 1670.5(a) .......................................................................................................................... 5

Education Code

§§ 99150, *et seq.* .............................................................................................................. 9

§ 99150(b)(2) ..................................................................................................................... 9

§ 99151(c) ......................................................................................................................... 10

§ 99151(f) .......................................................................................................................... 10

§ 99159.................................................................................................................... 1, 2, 9, 10

Federal Rules of Civil Procedure

Rule 602 .............................................................................................................................. 3

Rule 802 .............................................................................................................................. 3

**Other Authorities**

Schwarzer, Tashima & Wagstaffe, Cal. Practice Guide – Federal Civil Procedure Before Trial (The
Rutter Group 2013) ........................................................................................................... 2

PLAINTIFFS' REPLY ISO *EX PARTE* APPLICATION FOR TRO AND OSC RE PRELIMINARY INJUNCTION
Case No. CIV 523184-SBA

## I. **INTRODUCTION**

Defendants Educational Testing Services ("ETS") and the College Entrance Examination Board's ("College Board") (collectively "Defendants") opposition demonstrates: (1) Defendants' decision to invalidate over 600 Advanced Placement ("AP") scores of 286 Mills High School ("MHS") students was based **solely** on allegedly irregular seating arrangements; (2) there is **no evidence of cheating or wrongdoing** by any student; and (3) the Defendants have done little to investigate. As set forth in the ex parte application, Plaintiffs San Mateo Union High School District ("SMUHSD") and the AP Students - Viking Parent Group ("Viking Group") ("collectively "Plaintiffs") are likely to prevail on their claims, and the harm to the Plaintiffs will be substantial if relied is not granted.

Conspicuously missing in the voluminous documents attached to Defendants' declaration is any investigative report by Defendants. Instead, Defendants cites to one e-mail from one student that set forth a litany of complaints about the AP Statistics exam. (Declaration of Amy Cuccia ("Cuccia Decl."), Ex. F.) Defendants concede that the decision to indiscriminately invalidate all 600 plus AP scores was reached **without an onsite investigation** being done. (*Id.*, ¶ 39.) Defendants also concede this decision was made **without performing a statistical analysis**, or any analysis whatsoever. (*Id.*, ¶ 40.)

Plaintiffs, based on the evidence presented here, have a reasonable likelihood of prevailing on their claims that Defendants violated their contractual obligations and their obligations under Education Code § 99159 by invalidating the AP scores: (1) without conducting an adequate investigation; (2) without determining if there was any cheating or wrongdoing by any student; (3) without an investigation of the totality of the circumstances surrounding each test invalidation; (4) without providing students an opportunity to contest their test invalidations; and (5) without providing the students due process. Plaintiffs are also able to show harm and prejudice if Defendants' actions are not enjoined. As such, issuance of a TRO and an OSC regarding Preliminary Injunction is warranted.

Defendants argue that they should prevail here because in three other cases, Defendants were not subject to a TRO. The result in three different cases with <u>different</u> facts is not a reason to impose an unjust result on the 286 MHS students here. In addition, those cases are distinguishable since Defendants conducted an actual investigation and there was substantial evidence of wrongdoing that jeopardized the security and validity of the AP test scores. (Cuccia Decl., Ex. A.) For example, in

PLAINTIFFS' REPLY ISO *EX PARTE* APPLICATION FOR TRO AND OSC RE PRELIMINARY INJUNCTION
Case No. CV 13-3660-SBA

1   Crescenta Valley, seven students confessed to copying answers or opened test booklets early  (*Id.*)  In

2   Trabuco Hills, students confessed to cheating  (Declaration of Nancy L. Fineman ("Fineman Decl."),

3   Ex. 1.)  This case, however, is particularly egregious since Defendants invalidated over 600 AP test

4   scores without any evidence of cheating or wrongdoing by any student.  **The evidence in this case**

5   **shows the integrity of the exam environment was maintained and that the test results are valid.**

6          Defendants next argue that they had an unlimited right to invalidate test results because the

7   operative contracts gave them unfettered authority to invalidate test scores.  This is incorrect factually

8   and is contrary to California common law (which imposes on Defendants a duty to act in good faith), the

9   California Constitution and California statutory law, particularly Education Code § 99159.

10         Defendants also contend that there is no harm since students can take retests.  The testing

11  environment for the August 2013 retest is not the same as for the original tests, with students being

12  forced to retake exams with less than one month preparation time or in the case of those students who

13  are unavailable for many reasons, "no preparation time."  As such, the MHS students are not being

14  treated equally and are being subject to a different testing process even though Defendants can't prove

15  any student did anything wrong or that the test results are invalid.  The substantial injury and harm to

16  Plaintiffs, which is the other half of the TRO and preliminary injunction analysis, is set forth in Section

17  III.A.2 of the *ex parte* application.

18  **II.     RESPONSE TO DEFENDANTS' EVIDENCE**

19         While courts can give some weight to inadmissible evidence in resolving a motion for TRO and

20  preliminary injunction, the court should take into account the declarant's competency, personal

21  knowledge and credibility.  *Bracco v. Lackner*, 462 F.Supp. 436, 442, fn. 3 (N.D. Cal. 1978).  "Judges

22  are inclined to view inadmissible evidence with skepticism."  Schwarzer, Tashima & Wagstaffe, Cal.

23  Practice Guide – Federal Civil Procedure Before Trial (The Rutter Group 2013) ¶ 13:107-57, p. 13-60.

24  "Although the judge has discretion to consider hearsay evidence, only *reliable* hearsay has persuasive

25  value and even then may be given less weight than admissible evidence."  *Id.* (emphasis in original).

26         Defendants' rely on hearsay, insinuations from website articles, unproven allegations and

27  recitation to different situations at other schools in their opposition papers.  Similarly, the declarations of

28  Ms. Cuccia and Mr. Packard are not based on personal knowledge but on review of "pertinent

PLAINTIFFS' REPLY ISO *EX PARTE* APPLICATION FOR TRO AND OSC RE PRELIMINARY INJUNCTION
Case No. CIV 523184-SBA

1   correspondence" and "relevant records."  (Cuccia Decl., ¶ 1; Declaration of Trevor Packard ("Packard

2   Decl."), ¶ 1.)

3       Specifically, **Paragraphs 12-34** involve the statements and actions of Dionne Evans and Patricia

4   Taylor, but they have not submitted declarations.  (Cuccia Decl., ¶¶ 12-34.)  Ms. Cuccia's declaration

5   consists almost exclusively of hearsay, not personal knowledge, and therefore should not be viewed with

6   much, if any, weight and should not be viewed as credible.  *See* Fed. R. Civ. P. 602, 802.

7       Similarly, Ms. Cuccia is not an author of any of the e-mails attached as **Exhibits F-Q** to her

8   declaration, all of which are hearsay and which she cannot testify about on personal knowledge.  This is

9   critical since Defendants cite these e-mails as evidence to prove that an investigation was done.  The fact

10  that such evidence is not being introduced through people with personal knowledge is telling.

11      Plaintiffs also object to **Paragraphs 12 and 13** of Mr. Packard's declaration since they are

12  hearsay statements regarding statements and actions of Angela Palestro, not Trevor Packard.

13      All of this underscores the central defect in Defendants' conduct:  Defendants have not and

14  cannot submit admissible evidence to prove that the test results are not valid.

15  **III.   LEGAL ARGUMENT**

16      **A.     Plaintiffs Have Standing to Sue**

17      An organization has representational standing if: (a) its members would otherwise have standing

18  to sue in their own right; (b) the interests the organization seeks to protect are germane to the

19  organization's purpose; and (c) neither the claim asserted nor the relief requested requires the

20  participation of individual members in the lawsuit.  *See, i.e. Hunt v. Washington State Apple Adver.*

21  *Comm'n*, 432 U.S. 333, 343 (1977).

22      Both Plaintiffs have met these three prongs.  First, both Plaintiffs' members would have

23  independent standing to sue based on the present and future injuries suffered resulting from the

24  Defendants' actions as articulated in the first amended complaint. Second, the interests articulated in the

25  complaint are germane to both the Viking Group and SMUHSD's purposes of protecting and vindicating

26  the contractual, due process, and educational rights of their constituent students and parents.  Third, the

27  relief requested does not require the participation of individual members as the proof of Defendants'

28  misconduct is common to all MHS students who had their AP test scores improperly invalidated.

PLAINTIFFS' REPLY ISO *EX PARTE* APPLICATION FOR TRO AND OSC RE PRELIMINARY INJUNCTION
Case No. CIV 523184-SBA

1  Defendants assert that the Plaintiffs lack associational standing based on the purported conflicts

2  of interest that: (1) some of the parents and students may prefer to retest rather than litigate, and (2) that

3  certain students may claim that SMUHSD is responsible for the Defendants' cancellation of scores, even

4  though SMUHSD has no authority over the Defendants' unilateral choice to cancel scores without an

5  investigation.  Even if these conflicts actually exist, the Defendants' contentions nonetheless fail.

6  Internal conflicts of interest are irrelevant to the associational standing doctrine.  The Ninth

7  Circuit has specifically "reject[ed] the suggestion that unanimity of membership be required in

8  organizations seeking standing."  *Associated Gen. Contractors of California, Inc. v. Coal. for Econ.*

9  *Equity*, 950 F.2d 1401, 1409 (9th Cir. 1991); see also *See Sierra Club v. Glickman*, 82 F.3d 106, 110

10  (5th Cir. 1996) (granting a Federation standing even though not all members supported the intervention).

11  Moreover, even where courts recognize that conflicts such as those alleged by the Defendants

12  exist, such conflicts are still insignificant in the associational standing analysis. Indeed, in order for

13  associational standing to be denied, conflicts of interest must be "profound," quite unlike the "conflicts"

14  the Defendants assert here.  *See San Joaquin Deputy Sheriffs' Ass'n v. Cnty. of San Joaquin*, 898

15  F.Supp.2d 1177, 1192 n.10 (E.D. Cal. 2012) (citation omitted).

16  Defendants are merely speculating as to the existence of a "conflict of interest".  Even assuming

17  a "conflict" exists here, denying representational standing to associations with minor conflicts of interest

18  is contrary to the Supreme Court's preference for associational standing and its high value as a means

19  for litigating individual members' claims.  *See Int'l Union, United Auto., Aerospace & Agr. Implement*

20  *Workers of Am. v. Brock*, 477 U.S.  274, 288-90 (1986) (discussing the strengths of associational

21  standing and its importance for the just adjudication of claims).

22  To date, over 180 students and parents have joined together to form the unincorporated

23  association known as the AP Students - Viking Parent Group ("Viking Group).  Declaration of Jack W.

24  Lee, § 4.  The Mills High School parent teacher organization, the Vikings-Parent group, which is a

25  registered 501(c)(3) corporation, has also joined the Viking Group.  *Id.*

26  Both the Viking Group and SMUHSD have standing to vindicate the students' interests in this

27  matter over the Defendant's empty assertions that minor, internal associational conflicts of interest are

28  otherwise preclusive.  None of the authorities cited by Defendants calls for a contrary result.

**B.      Plaintiffs Seek An Appropriate Remedy**

The emergency relief sought by Plaintiffs seeks to maintain the status quo.  Prior to Defendants'
decision to invalidate, Defendants were under a legal and contractual obligation to validate, score and
report the results of the AP cases.  The status quo means the last, uncontested status which preceded the
pending controversy.  *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879
(9th Cir. 2009).

In this case, the Defendants have actively violated their contracts by affirmatively withholding
the test scores of the MHS students.  "Confusion in breach of contract cases as to whether an injunction
is mandatory or prohibitory may stem from the meaning of 'status quo.'  A plaintiff's view of the status
quo is the situation that would prevail if its version of the contract were performed.  A defendant's view
of the status quo is its continued failure to perform as the plaintiff desires. To a breach of contract
defendant, any injunction requiring performance may seem mandatory."  *Stockstill v. Quinnipiac Univ.*,
2010 U.S. Dist. LEXIS 49481 at *20-*22 (D. Conn. May 19, 2010) (holding that an injunction to stop
rescission of a college admission is a prohibitory injunction).  Here, the Defendants are being enjoined
from withholding AP test scores from the colleges and universities requested by the students.

**C.      Plaintiffs Have a Likelihood of Prevailing on the Merits**

Regardless, under the mandatory injunction standard or the prohibitory injunction standard,
Plaintiffs have sufficiently introduced evidence to show that they are likely to prevail on the merits.
*Winter v. Natural Resources Defense Council*, 555 U.S. 7, 20 (2008).

**1.      The Viking Group Has Sufficiently Alleged a Breach of Contract**

Plaintiffs have sufficiently alleged a breach of contract claim as Defendants had a contractual
obligation to report the AP scores by July 2013 and Defendants did not do so.  RJN Ex. 8 at 8.

"If the court as a matter of law finds the contract or any clause of the contract to have been
unconscionable at the time it was made the court may refuse to enforce the contract, or **it may enforce
the remainder of the contract without the unconscionable clause**, or it may so limit the application of
any unconscionable clause as to avoid any unconscionable result."  Civ. Code § 1670.5(a) (emphasis
added).  Defendants' position that Plaintiffs cannot argue that only one contract provision is

unconscionable (Opp. Brief, pg. 15:17-20) is contrary to California law.  The cases cited by Defendants[1] are all arbitration cases involving nonsignatories seeking to enforce a contract but avoid the arbitration clause or situations where one party simultaneously held contradictory positions regarding the applicability of an arbitration clause.  These cases are distinguished from the case here.

A contract clause is unconscionable if it is both procedurally and substantively unconscionable. *Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC*, 55 Cal. 4th 223, 246 (2012).  Defendants argue that a "form contract" is not procedurally unconscionable (Opp. Brief, pg. 16:17-20) but this is contrary to California law.  The procedural element of an unconscionable contract generally is an adhesion contract which is imposed and drafted by the party with superior bargaining strength and the party can only accept or reject its terms.  *Little v. Auto Stiegler, Inc.* 29 Cal.4th 1064, 1071 (2003).  The contract with the students is a contract of adhesion and therefore procedurally unconscionable.  There is no other way to get credit for college through high school except through AP.

Substantive unconscionability is also present here.  "A contract term is substantively unconscionable if it is either (1) **overly harsh** or (2) so **one sided** as to shock the conscience." *Vargas v. SAI Monrovia B, Inc.*, 216 Cal.App.4th 1269, 1287 (2013) (citations omitted) (emphasis added). "Where a party with superior bargaining power has imposed contractual terms on another, courts must carefully assess claims that one or more of these provisions are one-sided and unreasonable." *Gutierrez v. Autowest, Inc.*, 114 Cal.App.4th 77, 88 (2003).  Defendants claim that their authority to invalidate test score is not subject to anyone's review and they have no obligation to investigate any allegations or have proof of actual cheating or wrongdoing.  Opp. Brief, pg. 17:4-10.  This interpretation is both overly harsh and one-sided and therefore substantively unconscionable.

Civil Code § 1643 states that a contract must be interpreted to make it lawful and operative without violating the intent of the parties.  The only interpretation of the contract that makes it not unconscionable imposes on Defendants a duty to investigate (which Defendants did not do) and proof of cheating and wrongdoing (which Defendants do not have) before test scores can be invalidated. Defendants' interpretation would render the entire provision unconscionable and severable from the

---

[1]    *Tepper Realty Co. v. Mosiac Tile Co.*, 259 F.Supp. 688 (S.D.N.Y. 1966); *Lounge-A Round v. GCM Mills, Inc.*, 109 Cal.App.3d 190 (1980); *Goldman v. KPMG LLP*, 173 Cal.App.4th 209 (2009)

1    contract.  Defendants claim that "[c]ourts have repeatedly rejected unconscionability challenges to score

2    cancellation provisions" (Opp. Brief, pg. 17:11-12) but cite no California law to support this position.

3    Instead, Defendants cite decades-old cases outside this jurisdiction, which do not apply here.[2]

4               **2.      SMUHSD Has Sufficiently Alleged a Breach of Contract**

5               Plaintiff SMUHSD has also sufficiently alleged a breach of its contract, individually and in its

6    representative capacity on behalf of the impacted MHS student.  The purpose of the contract is for

7    SMUHSD to provide a secure testing environment and Defendants must validate, score and report the

8    scores.  SMUHSD performed its duties.  The evidence shows that the AP test environment at MHS was

9    secure and **there is no evidence of cheating**.  Belzer Decl., ¶ 10; Arbizu Decl., ¶¶ 3-7, 9-10, 7-25;

10   Student Decls.; Proctor Decls. Further, Defendants have no justification for breaching their contract with

11   the MHS students directly because they can allege no breach on the part of the students.

12              In an *ex post facto* effort to justify their actions, Defendants cite to websites, which are hearsay,

13   which discuss cheating generally and an incident involving MHS (and as a result of being caught

14   cheating were punished with proof).  This only serves to prove how Defendants' actions were based on

15   insinuation and hearsay, not facts and proof.  Moreover, hypocritically, in contrast to insinuations and

16   hearsay, there is evidence, based on personal knowledge, that a proctor representing the ETS was using

17   a cell phone during an examination to report to the ETS, demonstrating that Defendants do not expect

18   nor require strict compliance with all of the rules.  Declaration of Jason Zhang, ¶ 9; Declaration of Jean

19   Joh, ¶¶ 7-8.

20              Defendants also claim that they gave SMUHSD an opportunity to provide information to prevent

21   invalidation of all of their AP test scores, but this argument is not credible, since it is based on the

22   declarations of Amy Cuccia and Trevor Packard, neither of whom are providing declarations based on

23   personal knowledge, when compared to the declaration of Valerie Arbizu, who testified on personal

24   knowledge that she provided all of the requested information to Defendants.  Arbizu Decl., ¶¶ 34, 36.

25       ───────────────────

26              [2]      *Crow v. ETS,* 1982 U.S. Dist. LEXIS 18191 (W.D. La. April 28, 1982) is inapposite since
     "Louisiana courts have not adopted the theory of adhesion contracts," which is different from California.
     *K.D. v. ETS*, 87 Misc. 657, 659-660 (N.Y. Sup. Ct. 1976) is factually distinguishable since in that case,

27   ETS had actual evidence of cheating since it conducted a statistical analysis showing that the plaintiff's
     score was strikingly similar to the student next to the plaintiff.  Defendants misstate the holding of *Koza
     v. ACT, Inc.*, 2001 WL 1191050 at *10 (Mich. Ct. App. Oct. 10, 2001), an unpublished, non-binding

28   opinion, since the court in that case held an arbitration provision was not unconscionable, not a score
     cancellation clause that allows a testing service to sanction students without investigation or recourse.

### 3.    Defendants Violated the Implied Covenant of Good Faith and Fair Dealing

Defendants violated the implied covenant of good faith and fair dealing since Defendants did not exercise the discretion they had in good faith.  *Waller v. Truck Ins. Exchange, Inc.,* 11 Cal.4th 1, 36 (1995).  *Carma Developers, Inc. v. Marathon Dev. California, Inc.*, 2 Cal.4th 342, 374 (1992) and *Storek & Storek, Inc. v. Citicorp Real Estate, Inc.*, 100 Cal.App.4th 44, 56, n. 10 (2002) do not help Defendants since in those cases the contracts do not explicitly require the party with superior bargaining to act in good faith before it acts.  Both of Defendants' contract state that "[w]hen testing irregularities occur, the College Board may decline to score of one of more students, and it may cancel the scores of one or more students . . ."  (Cuccia Decl., Ex. B, p. 4; Ex. D, p. 14.)  "Testing irregularities" are vaguely defined as "problems with the administration of an exam."  (*Id.*)  Since all of the power and the discretion rests solely with the Defendants, that discretion must be exercised in good faith.

In each of the cases cited by Defendants, there was evidence of extensive investigation by the educating testing provider and an opportunity for the aggrieved plaintiff to be heard and to be represented by counsel.  *See Langston v. ACT, Inc.,* 890 F.2d 380, 386 (11th Cir. 1989) ("ACT engaged in an **extensive investigation**, offered the plaintiff a retest, and **offered the plaintiff the opportunity to arbitrate**" before invalidating the score.); *Johnson v. ETS*, 754 F.2d 20, 26 (1st Cir. 1985) (ETS paid three handwriting experts to evaluate plaintiff's defense and gave her an opportunity to be heard and represented by counsel.)[3]  Missing from Defendants' argument is any support in law, logic or equity to treat large numbers of innocent students worse than one student in which there is an actual factual basis for believing he or she cheated.  Regardless, Defendants offer no investigative report in their voluminous filing to justify their indiscriminate invalidation of the scores.

If any legal rule can be drawn from the case law cited by Defendants, it is that test service agencies have a duty to act in good faith, which requires evidence of a thorough investigation and evidence of wrongdoing by a student before scores can be invalidated.  There is no evidence of either here.  Defendants admit that no statistical analysis was done (Opp. Brief, pg. 19:1-14; Cuccia Decl., ¶

---

[3]  *See also Scott v. ETS*, 252 N.J. Super. 610, 620 (N.J. Super. Ct. App. Div. 1991), which is instructive here, the testing service compared plaintiffs' answer sheets to those of another test-taker, as well as discrepancies between the test taker's current score and his earlier scores.  *See also K.D.*, 87 Misc. at 659-660 (similar investigation was done); *De Pina v. Educ. Testing Serv.*, 31 A.D.2d 744, 745 (App. Div. 1969) (similar investigation was done); *Yaeger v. Educational Testing Service*, 158 A.D.2d 602, 604 (App. Div. 1990) (referencing "thorough effort" to investigate).

1   40) even though the cases cited by Defendants show that there are ways to compare scores between

2   students.  Defendants also acknowledge that they "have not accused any of the [MHS] students of

3   cheating . . ."  Opp. Brief, pg. 14:11-12.  The evidence proves that Defendants did not act in good faith.

4   The purpose of the rules is to make sure there is a secure testing environment and valid test results,

5   which was done here.

6       **4.**       **Plaintiffs Can Prevail on Their Unfair Competition Law ("UCL") Claim**

7       Plaintiffs can prevail on their UCL claim because Defendants violated the "unlawful" prong,

8   specifically Education Code § 99159, by not having substantial evidence to invalidate the test scores of

9   the 286 MHS students.  Complaint, ¶ 107.  Any violation of a statute constitutes a violation of the

10  "unlawful" prong of the UCL.  *McKell v. Washington Mut., Inc.,* 142 Cal.App.4th 1457 (2006), 1474.

11  In their Supplemental Opposition Brief, Defendants contend that Plaintiffs do not have a private right of

12  action under Education Code § 99159.  While Plaintiffs contest this assertion, Plaintiffs still have a right

13  to bring a UCL claim for injunctive relief for Defendants' violation of § 99159.  *See Zhang v. Superior*

14  *Court*, 2013 Cal. LEXIS 6520 at *46-*47 (Aug. 1, 2013) (holding that "the UCL allowed redress of

15  unlawful business practices whether or not the underlying statute was privately enforceable.").

16      Plaintiffs have also alleged violation of the "unfair" prong of the UCL.  *Gregory v. Albertson's,*

17  *Inc.*, 104 Cal. App. 4th 845, 853-854 (2002), which is cited by the Defendants, merely requires that an

18  unfair business practice be tethered to a constitutional, statutory or regulatory provision.  Defendants'

19  misconduct here is tethered directly to Education Code §§ 99150, *et seq.*  Education Code § 99150(b)(2)

20  states that it is the intent of the California Legislature to "[e]nsure due process protection of test subjects

21  whose scores are being questioned for suspected inauthenticity or irregularity in test administration."

22  Ed. Code § 99150(b)(2).

23      **5.**       **Plaintiffs Have Alleged a Due Process Violation**

24      Defendants do not dispute that they did not provide due process to the MHS students but instead

25  argue only that courts have consistently held that educational testing providers are not state actors, yet

26  Defendants cite no authority from California or the Ninth Circuit.  In California, the courts have found a

27  non-government entity to have acted as a state actor if any of the following four tests are met: (1) the

28  public function test; (2) the joint action test; (3) the state compulsion test; or (4) the governmental nexus

PLAINTIFFS' REPLY ISO *EX PARTE* APPLICATION FOR TRO AND OSC RE PRELIMINARY INJUNCTION
Case No. CIV 523184-SBA

1    test." *Ohno v. Yasuma*, 2013 U.S. App. LEXIS 13496 at *30-*31 (9th Cir. July 2, 2013).

2    "Joint action" exists where the government affirms, authorizes, encourages, or facilitates

3    unconstitutional conduct through its involvement with a private party. *Id*. at *31.  As set forth in the

4    Complaint, joint action exists in two forms.  One, Defendants acted through public entities, such as

5    Defendant SMUHSD in administering its exams.  Complaint, ¶ 27, 127.  Second, public universities,

6    which are public entities, decide whether to grant college credit and allow high school students to skip

7    introductory classes based on AP test scores.  Complaint, ¶¶ 10-12, 35, 127.  In both these ways, the

8    government affirms, authorizes, encourages or facilitates the conduct of Defendants, thus creating joint

9    action between Defendants and the state.

10    Under the "governmental nexus" test, "the inquiry must be whether there is a sufficiently close

11    nexus between the State and the challenged action of the regulated entity so that the action of the latter

12    may be fairly treated as that of the State itself." *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 351

13    (1974).  Here, Education Code § 99159 directly regulates Defendants and it is therefore the State of

14    California which decides whether or not appropriate due process has been met prior to invalidation of a

15    "standardized" test score.  "Standardized test" is specifically defined in Education Code § 99151(c) to

16    include "Advanced Placement Tests."  Education Code § 99151(f) defines "[t]est sponsor" or "test

17    agency" to include the Defendants here.  As such, there is a close nexus between the State of California

18    and Defendants such that their test invalidation decisions, which are governed by Education Code §

19    99159, can be fairly treated as the act of the State of California itself.

20    **IV.**    **CONCLUSION**

21    For the foregoing reasons, Plaintiffs respectfully request that this Court grant their *Ex Parte*

22    Application for a Temporary Restraining Order and Order to show Cause re Preliminary Injunction.

23    Dated:  August 14, 2013

24    **COTCHETT, PITRE & McCARTHY, LLP**      **MINAMI TAMAKI LLP**
By     */s/ Nancy L. Fineman*                  By     */s/Jack W. Lee*

25    NANCY L. FINEMAN                        JACK W. LEE
**LOZANO SMITH**                            *Attorneys for Plaintiff AP Students—Viking Parent*

26    By     */s/ Gregory A. Wedner*              *Group*

27    GREGORY A. WEDNER
*Attorneys for Plaintiff San Mateo Union*
*High School District*

28

PLAINTIFFS' REPLY ISO *EX PARTE* APPLICATION FOR TRO AND OSC RE PRELIMINARY INJUNCTION
Case No. CIV 523184-SBA